Feb 14 06 02:30p    JESS M. BERKOWITZ        1-212-431-4471           p.2

BERMAN S,

**MEMO ENDORSED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA, : STIPULATION AND ORDER
: OF INTERLOCUTORY SALE
- v. - : AND PARTIAL SETTLEMENT
:
ALL RIGHT, TITLE AND INTEREST : Case No. 05 Civ. 9548 (RMB)
IN REAL PROPERTY AND :
APPURTENANCES LOCATED AT :
11 NORTH AVENUE EAST, CRANFORD, :
NEW JERSEY, et. al., :
:
Defendants-in-rem. :
:
-------------------------------------------------------x

     WHEREAS, the United States of America ("Plaintiff"), by and through its counsel, Michael Garcia, United States Attorney for the Southern District of New York, of counsel Christina Paglia Bischoff, Assistant United States Attorney, filed the above-captioned action on or about November 14, 2005, seeking the forfeiture of the property known as 11 North Avenue East, Cranford, New Jersey (the "Defendant Property"), on the grounds that, inter alia, the Defendant Property was the proceeds of, and used to facilitate, narcotics trafficking, in violation of Title 21, United States Code, Section 881;

     WHEREAS, on or about November 17, 2005, the United States of America served notice upon all persons and entities believed to have an interest in the Defendant Property by personal service and certified mail, return receipt requested;

     WHEREAS, the following persons and/or entities filed claims to the Defendant Property:

     a) On or about December 9, 2005, Melissa Long, as Claimant, filed a Verified Statement of Interest and Right, claiming an interest in the Defendant Property as sole owner of said

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 2/22/06
```

premises;

WHEREAS, no other person or entity has filed a claim to the Defendant Property;

WHEREAS, the United States and the undersigned Claimant agree that the Defendant Property should be sold to preserve its value pending a final adjudication on the merits, and whereas the interlocutory sale shall compromise and settle the ~~Claimant~~ Mortgagee's claim;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED that plaintiff, United States of America, by and through its attorney, Michael Garcia, United States Attorney for the Southern District of New York, and Christina Paglia Bischoff, Assistant United States Attorney, and the above-described Claimant, by their undersigned authorized representatives, consent to the following:

1. The legal description of the Defendant Property is: 11 North Avenue East, Cranford, New Jersey, more particularly described in the quit claim deed found in Book 5347, Page 626-630 attached hereto as Exhibit A. The title to the Defendant Property is in the name of Melissa Long.

2. The Claimant represents that, prior to receiving notice of this action, she had entered into a contract with a prospective non-party buyer who has offered to purchase the Defendant Property for a cash price of $ 915,000.00.

3. The net proceeds from the sale of the Defendant Property will include all moneys realized from the sale of the Defendant Property, except for the following:

   a. Real estate commissions, if any;

   b. The amount due to any mortgagee, as more particularly described below;

   c. Any other real estate or property taxes which are due and owing;

   d. Insurance costs, if any;

   e. Escrow fees;

  f. Non-escrowed down payments;

  g. Document recording fees not paid by the buyer;

  h. Title fees;

  I. County transfer fees; and

  j. Claimant's reasonable real estate attorney fees, if any, with respect to the sale of the Defendant Property.

  4. Plaintiff and Claimant hereby agree to substitute the net proceeds realized from the sale of the Defendant Property as a "substitute res" for the Defendant Property in this action. The cumulative net proceeds shall be remitted to the custody and control of JESS M. BERKOWITZ, ESQ., as escrow agent, as a substitute res in this case, and held pending further order of the Court.

  5. Claimant agrees that she will retain custody, control, and responsibility for the Defendant Property until the interlocutory sale has been completed.

  6. Claimant represents that Claimant has the sole authority to enter into this Stipulation regarding the Defendant Property, and agrees to hold harmless the United States from any other claims filed in this action by third parties alleging an interest in the Defendant Property.

  7. Claimant agrees that she will assume responsibility for the payment of any lien recorded by Jerome Petit with respect to the Defendant Property, which shall not be paid from the proceeds of the interlocutory sale.

  8. The parties agree that, upon the interlocutory sale, the Mortgagee will be paid all unpaid principal and interest due through the date of the closing, pursuant to the promissory note and mortgage dated March 5, 2003 (documents attached hereto as Exhibit B), recorded on March 24, 2003, in the official records of Morris County, New Jersey.

  9. Each party agrees to bear its own costs and attorneys' fees.

  10. The signature pages of this stipulation may be executed in one or more

counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

11. Counsel below acknowledge that they are authorized to execute this stipulation on behalf of their clients.

Dated: New York, New York
       February 16, 2006

                                        MICHAEL GARCIA
                                        United States Attorney for the
                                        Southern District of New York

                                        By: _____
                                        Christina Paglia Bischoff (CP-2271)
                                        Assistant United States Attorney
                                        One St. Andrew's Plaza
                                        New York, New York 10007
                                        (212)637-1204

                                        _____
                                        MELISSA LONG, CLAIMANT

                                        _____
                                        JESS M. BERKOWITZ, ESQ. ESCROWEE
                                        401 Broadway, Suite 1510
                                        New York, New York 10013
                                        (212)431-4453

## ORDER

Having reviewed the foregoing Stipulation and good cause appearing,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

The Stipulation is So Ordered.

_RMB_
_____
HONORABLE RICHARD M. BERMAN
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK
2/22/06

# EXHIBIT A

| Issued by: | |
|---|---|
| TRANSNATION TITLE INSURANCE COMPANY | Schedule A-4 - Description |

## COMMERCIAL COMMITMENT FOR TITLE INSURANCE

Your Reference:   WT99-552TR                       Commitment No.:

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Cranford, County of Union and State of New Jersey being more particularly described as follows:

Tract I

BEGINNING at a point in the northwesterly line of North Avenue said point being distant 63.12 feet southwesterly from the produced intersection of the same with the southwesterly line of Alden Street, said point being in the center of a party wall and from said point running:

(1) Along the northwesterly line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 6.80 feet to an angle in the same; thence

(2) Still along the same, South 88 degrees 20 minutes 00 seconds West, a distance of 20.29 feet to a point; thence

(3) North 45 degrees 07 minutes 00 seconds West, a distance of 46.00 feet to a point; thence

(4) North 44 degrees 50 minutes 00 seconds East, a distance of 21.38 feet to a point in the center of a party wall; thence;

(5) Through and in continuation of the center of said party wall South 45 degrees 20 minutes 00 seconds East, a distance of 59.99 feet to the point and place of BEGINNING

Tract II

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Cranford, County of Union and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the northwesterly line of North Avenue, said point being distant 42.31 feet southwesterly from the produced intersection of the same with the southwesterly line of Alden Street, said point being in the center of a party wall and from said point running:

(1) Along said line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 20.51 feet to a point in the center of the party wall referred to in Tract I; thence

(2) Through and in continuation of the center of said party wall, North 45 degrees 20 minutes 00 seconds West, a distance of 59.99 feet to a point; thence

(3) North 44 degrees 50 minutes 00 seconds East, a distance of 20.53 feet to a point; thence

M10087-0384

(4) South 45 degrees 34 minutes 00 seconds East, through and in continuation of the center of the party wall marking the beginning point of the within tract, a distance of 59.99 feet to the point and place of BEGINNING.

Both tracts being described as follows:

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Cranford, County of Union and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the northwesterly line of North Avenue, said point being distant 42.31 feet southwesterly from the produced intersection of the same with the southwesterly line of Alden Street, said point being in the centerline of a party wall and from said point running:

(1) Along said line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 27.61 feet to an angle in the same; thence

(2) Still along the said line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 20.29 feet to a point; thence

(3) North 45 degrees 07 minutes 00 seconds West, a distance of 46.00 feet to a point; thence

(4) North 44 degrees 50 minutes 00 seconds East, a distance of 41.91 feet to a point in the center of a party wall; thence

(5) Through and in continuation of the center of a party wall, south 45 degrees 34 minutes 00 seconds East, a distance of 59.99 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 7 in Block 192 on the Township of Cranford Tax Map.

The above description is drawn in accordance with a survey made by P.J. Grall, dated 12/12/70.

The above description is drawn in accordance with a survey made by P.J. Grall, dated 12/12/70.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 7 in Block 192 on the Township of Cranford Tax Map.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 7 in Block 192 on the Township of Cranford Tax Map.

The above description is drawn in accordance with a survey made by P.J. Grall, dated 12/12/70.

M10087-0385

# EXHIBIT B

Case 2:05-cv-09548-RMB    Document 18    Filed 02/22/2006    Page 8 of 16

RECORDATION REQUESTED BY:
Hughes & Finnerty, P.C.
846 Broadway, P.O. Box 65
Bayonne, NJ 07002

WHEN RECORDED MAIL TO:
Hughes & Finnerty, P.C.
846 Broadway, P.O. Box 65
Bayonne, NJ 07002

SEND TAX NOTICES TO:



_____ SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

## MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $650,000.00.

THIS MORTGAGE dated March 5, 2003, is made and executed between Melissa Long whose address is 63 South Ridgedale Avenue, East Hanover, NJ 07963 (referred to below as "Grantor") and Commercial Realty Funding Corp., whose address is 299 Market Street, Suite 440, Saddle Brook, New Jersey 07663 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Union County, State of New Jersey:

See Schedule A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property is commonly known as 11-13 North Avenue East, Cranford, NJ 07016.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.
>
> **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.
>
> **Hazardous Substances.** Grantor represents and warrants that the Property never has been, and never will be so long as this Mortgage remains a lien on the Property, used for the generation, manufacture, storage, treatment, disposal, release or threatened

M89972-11334

for the generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance in violation of any Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this paragraph of the Mortgage. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Mortgage.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due and except as otherwise provided in this Mortgage.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Lender's Expenditures. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (1) be payable on

2
MB9972-0335

demand; (2) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (a) the term of any applicable insurance policy, or (b) the remaining term of the Note, or (3) be treated as a balloon payment which will be due and payable at the Note's maturity.

**Warranty; Defense of Title.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.

Full Performance. If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

Default. The occurrence of any one or more of the following events shall constitute an "Event of Default": (1) failure by Borrower to pay any principal or interest when due or failure to pay any other liabilities or make any other payment, fee or charge provided for herein when due or in any loan document; (2) any representation or warranty made or deemed made by Borrower in this document or any related agreement or in any certificate, document or financial or other statement furnished at any time in connection herewith or therewith shall prove to have been misleading in any material respect on the date when made or deemed to have been made; (3) failure by Borrower to furnish financial information when due or when requested, or permit the inspection of its books or records; (4) issuance of a notice of lien, levy, assessment, injunction or attachment in respect of a claim for an aggregate amount in excess of twenty five thousand dollars ($25,000.00) against Borrower's property; (5) failure or neglect of Borrower to perform, keep or observe any term, provision, condition, covenant herein contained, or contained in any other agreement or arrangement, now or hereafter entered into between Borrower and Lender; (6) any judgment or judgments are rendered or judgment liens filed against Borrower for an aggregate amount in excess of twenty five thousand dollars ($25,000.00) which within thirty (30) days of such rendering or filing is not either satisfied, stayed or discharged of record; (7) Borrower shall (i) apply for, consent to or suffer the appointment of, or the taking of possession by, a receiver, custodian, trustee, liquidator or similar fiduciary of itself or of all or a substantial part of its property, (ii) make a general assignment for the benefit of creditors, (iii) commences a voluntary case under any state or federal bankruptcy laws (as now or hereafter in effect), (iv) be adjudicated a bankrupt or insolvent, (v) file a petition seeking to take advantage of any other law providing for the relief of debtors, (vi) acquiesce to, or fail to have dismissed, within thirty (30) days, any petition filed against it in any involuntary case under such bankruptcy laws, or (vii) take any action for the purpose of effecting any of the foregoing; (8) Borrower shall admit in writing its inability, or be generally unable to pay its debts as they become due or cease operations of its present business; (9) Guarantor, shall (i) apply for, consent to or suffer the appointment of, or the taking of possession by, a receiver, custodian, trustee, liquidator or similar fiduciary of itself or of all or a substantial part of its property, (ii) admit in writing its inability, or be generally unable, to pay its debts as they become due or cease operations of its present business, (iii) make a general assignment for the benefit of creditors, (iv) commences a voluntary case under any state or federal bankruptcy laws (as now or

#B99972-1336

hereafter in effect), (v) be adjudicated a bankrupt or insolvent, (vi) file a petition seeking to take advantage of any other law providing for the relief of debtors, (vii) acquiesce to, or fail to have dismissed, within thirty days, any petition filed against it in any involuntary case under such bankruptcy laws, or (viii) take any action for the purpose of effecting any of the foregoing; (10) any lien created hereunder or provided for hereby or under any related agreement for any reason ceases to be or is not a valid and perfected lien having a first priority interest; (11) termination or breach of any Guaranty executed and delivered to Lender in connection with the obligations of Borrower, or if any Guarantor attempts to terminate, challenges the validity of, or its liability under, any such Guaranty; and (12) any change of ownership of the Borrower or the mortgaged property shall occur.

**Rights and Remedies on Default.** Upon Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

   **Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

   **UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

   **Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

   **Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

   **Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

   **Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

   **Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

   **Attorneys' Fees; Expenses.** In the event of default Grantors shall be responsible for (including the allocated costs of in house counsel) and disbursements incurred by Lender on its behalf or on behalf of any participating lenders, (a) in all efforts made to enforce payment of any obligation or effect collection of any collateral, or (b) in connection with the entering into, modification, amendment, administration and enforcement of the loan documents or (c) in instituting, maintaining, preserving, enforcing and foreclosing on Lender's security interest in or lien on any of the collateral, whether through judicial proceedings or otherwise, or (d) in defending or prosecuting any actions or proceedings arising out of or relating to Lender's transactions with Borrower, or (e) in connection with any advice given to Lender with respect to its rights and

4
HB9972-0337

obligations under this Agreement and all related agreements shall be paid by the Borrower and will be part of the Indebtedness payable under the Note and secured by the Mortgage. If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with the laws of the State of New Jersey. This Mortgage has been accepted by Lender in the State of New Jersey.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here _____ )

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Melissa Long, and all other persons and entities signing the Note in whatever capacity.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Grantor.** The word "Grantor" means Melissa Long.

HB9972-0338

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means COMMERCIAL REALTY FUNDING CORP., its successors and or assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 5, 2003, in the original principal amount of $650,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is April 1, 2028.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS. GRANTOR ACKNOWLEDGES RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS MORTGAGE.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

MB9972-0339

## AMENDED SCHEDULE A

ALL that certain tract, lot and parcel of land lying and being in the Township of Cranford, County of Union and State of New Jersey, being more particularly described as follows:

BEGINNING at a point in the northwesterly line of North Avenue, said point being distant 42.31 feet southwesterly from the produced intersection of the same with the southwesterly line of Alden Street, said point being in the centerline of a party wall and from said point running;

1. along said line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 27.63 feet; thence

2. still along the said line of North Avenue, South 44 degrees 50 minutes 00 seconds West, a distance of 20.32 feet to a point; thence

3. North 45 degrees 07 minutes 00 seconds West, a distance of 46.00 feet to a point; thence

4. North 44 degrees 50 minutes 00 seconds East, a distance of 41.91 feet to a point in the center of a party wall; thence

5. through and in continuation of the center of a party wall, South 45 degrees 34 minutes 00 seconds East, a distance of 59.99 feet to the point and place of BEGINNING.

The above description is drawn in accordance with a survey made by Frederick C. Mcola, dated January 9, 2003

(For Information Only) Being Lot(s) 7 Block 192 on the Tax Map of the Township of Cranford, New Jersey.

GRANTOR:

x _____ (Seal)
  Melissa Lang, Individually

Signed, acknowledged and delivered in the presence of:

x _____
  Witness

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF __NEW JERSEY__    )
                           ) SS
COUNTY OF __HUDSON__       )

**BE IT REMEMBERED** that on this 5th day of March, 2003, before me, the undersigned authority, personally appeared Melissa Lang who, I am satisfied, is the person named in the foregoing instrument, and I having first made known to her the contents thereof, she acknowledged that she signed, sealed and delivered the same as her voluntary act and deed. All of which is hereby certified.

_____
Jerome A. R.
Attorney at Law
State of New Jersey

See: Assignments
Inst.#   100518

HUGHES & FINNERTY                    Inst.#
846 BROADWAY                         249361
PO BOX 65
BAYONNE               NJ 07002       Paid
                      Recording Fee  $0.00
Mortgage              RT Fee         .00

XB9972-0341          END OF DOCUMENT